Honorable W. P. Waldrop, page 15

the attempted creation of a Superior Court and the transfer thereto of the jurisdiction of the county court did not affect the existence of the county court as a de jure office. If Chadbourne's entrance into and continuance in such office meets all the requirements of a de facto officer as defined by this court in Ekern v. McGovern, 154 Wis. 157, 142 N. W. 595, 46 L.R.A., N.S. 796, where it said; 'A person may be a de facto officer and have no real title at all to the place he assumes to have a right to. If one is in possession of an office and performs its duties and enters by right or such claim of right as not to be classable as a usurper, or has been in undisturbed possession so long as to be equivalent to an entry under claim of right, and still claims in good faith to be entitled to the office, and all surroundings afford an appearance of a de jure official status, he is as a general rule de facto what he claims to be. What gives him the status is color of authority — color of title is not essential, strictly speaking.'

". . . Where an office exists under the law it matters not how the appointment of the incumbent is made, so far as the validity of his acts are concerned. It is enough that he is clothed with the insignia of the office, and exercises its powers and functions."

The court further says:

"The reason for the rule that acts done by a de facto officer in a de jure office are valid rests upon grounds of public policy. If the contrary were held official acts of the gravest character would have to be declared void by reason of a defect in the title of the incumbent to the office. Property and personal rights would be subject to constant hazards, arising, not out of any infirmity in the procedure settling them but out of a defect in the title of the official exercising the functions of the office — a defect not in any way logically connected with the proper exercise of the assumed functions. Hence, given a de jure office and a de facto incumbent thereof, there is valid exercise of the powers of the office."

"(2) The fact that Judge Chadbourne acted under the name of Judge of the Superior Court, instead of Judge of the County Court, is immaterial. His so acting was under the color of a right conferred by the void act creating the Superior Court. Under such color of right he assumed to, and did in fact, exercise all the powers and functions

Honorable W. P. Waldrop, page 16

of the County Court. That he did not assume the name of the office was due to the fact that he supposed the jurisdiction of the County Court was transferred to the Superior Court and that he was authorized to transact the business of the former court under the title of the latter. There never was any doubt in the minds of either parties, counsel, court, or the public that Judge Chadbourne in acting upon matters under the jurisdiction of the County Court did so to the exclusion of the County Judge. That is what the void law said he should do, and that is what he did. Having taken the substance of the office, he is none the less a de facto judge though he did not assume its title. The inherent character of an act is not destroyed by a mere change in the form thereof, nor is such character changed by giving it a new name. The functions that belong to an office, and not its name, determine its identity. See Kirker v. Cincinnati, 48 Ohio 507, 27 N. E. 898."

The Supreme Court of Wisconsin also said in this case:

"(3) That there was in existence a de jure officer of the County Court at the time Judge Chadbourne was de facto judge thereof does not affect the validity of his acts as a de facto judge. He having ousted the de jure judge and exercised the functions of the office.

". . .

". . . So in the present case Judge Chadbourne held under color of title, had complete possession of the office, room, records, papers of the County Court, an existing de jure office, and exercised in full the powers and duties thereof. For that reason he was a de facto judge of a de jure court, and his acts are valid as to third parties."

The case just quoted is so nearly in point with the matter under discussion that we refrain from further discussing the point.

Honorable W. P. Waldrop, page 17

Insomuch as Mr. Elliot supposed himself to be "Criminal District Attorney", he took no oath of office as County Attorney and filed no bond as such officer. Would these facts militate against his being in the status of de facto County Attorney?

This question is authoritatively answered by decisions of the appellate courts of Texas.

In the case of Collier v. State, 287 S. W. 1095, the deputy sheriff in whose charge the jury was placed had made no bond as such officer. Upon appeal our Court of Criminal Appeals in discussing the matter said:

"Appellant contends that error was committed in that the jury was placed in charge of an officer other than a duly authorized officer of the law while they were considering their verdict. This question has given us no little concern, and were it one of first impression with us, the writer would not hesitate to hold that Davis, the party who was placed in charge of the jury by the sheriff, was not a de facto or de jure officer; but it seems that the overwhelming weight of authority in this and other states is to the effect that Davis was a de facto officer, and we do not feel justified in deciding this question against the great weight of authority. The identical question was decided contrary to appellant's contention by the Court of Civil Appeals in the case of Broach v. Garth, 50 S. W. 594. See also Williams v. State, 247 S. W. 263."

The court continues:

"The record discloses that the sheriff testified on hearing of motion for a new trial that Davis, the party who had charge of the jury, was not under any kind of a bond so far as the sheriff knew, but he had been acting under him as deputy sheriff, and he had requested Davis to help him for that term of the court; that hehhad helped him before, and that he had been acting as deputy sheriff of the county for about a month; that he had summoned witnesses prior to this time, some of them about three or four weeks before that, and that he had performed other duties in line with the duties of deputy sheriff for about

Honorable W. P. Waldrop, page 18

a month.  In the authorities will be found under the title of de facto officers in Volume 2, page 1845, of "Words & Phrases", to the effect that the facts above stated would bring Davis within the category of a de facto officer."

Other Texas decisions are found to the same effect, but for the sake of brevity we shall refrain from quoting them here.

The Texas cases of Aulanier v. Governor, 1 Tex. 653; Blewett v. Richardson Independent School District (Com. App.) 240 S. W. 529; Odem v. Sinton Independent School District (Com. App.) 234 S. W. 1090; Martin v. Grandview Independent School District, 266 S. W. 607, (error refused); and Broach v. Garth, 50 S. W. 594, all hold, as we understand them, that it is not necessary that a bond be given in order to constitute one a de facto officer.

Because the Commissioners Court of Grayson County during all the time covered by your question mistakenly supposed the office of County Attorney to be nonexistent in that County, said court did not fix any salary for the County Attorney.  What then shall be the measure by which may be determined the amount of salary due Mr. Elliot as de facto County Attorney of Grayson County while he supposed himself to be "Criminal District Attorney"?

In our opinion No. O-2981, written by Honorables Ocie Speer and R. W. Fairchild, Assistant Attorneys General, it was held on the authority of Texas Jurisprudence, Vol. 34, page 525, that:

"The court may not deny the officer any compensation whatever, and an order attempting to do so is void.  Until the rate has been fixed by the commissioners' court, the officer is entitled to the maximum rate specified in the statute. . . ."

We are therefore of the opinion that Mr. Elliot's compensation as County Attorney for the period mentioned in your question will be the maximum amount that could have been specified by the Commissioners Court under the statute then applicable to counties of the same population bracket as Grayson County.

Honorable W. P. Waldrop, page 19

689

In connection with the foregoing statement see the following cases: Hill County v. Sauls, 134 S. W. 267; Bastrop County v. Hearn, 70 Tex. 563, 8 S. W. 302; Baxter v. Rusk County, 11 S. W. (2d) 648; Searcy v. Wood County, 275 S. W. 719; Kaufman County v. Gaston, 273 S. W. 894; Smith v. Wise County, 187 S. W. 705; Montgomery County v. Talley, 169 S. W. 1141.

A de facto officer would be entitled to receive the same compensation as a de jure officer in the same position. (See City of Houston v. Albers, 73 S. W. 1064; Uhr v. Brown, 191 S. W. 379)

You are therefore advised that if Mr. Elliot makes any claim for compensation for his services as de facto County Attorney of Grayson County for the period mentioned in your letter, he will be entitled to be paid same in accordance with, and measured by, the principles stated in this opinion.

We trust we have given you the information which you desire.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ardell Williams
Assistant

By

George P. Blackburn
Assistant

APPROVED APR 13, 1943

ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE